## Case No. 16,912.

### The VELONA.

### [3 Ware, 139.] 1

District Court, D. Massachusetts.    Dec., 1857.

SHIPPING—AUTHORITY OF MASTER—SALE OF CARGO AT PORT OF DISTRESS—FREIGHT.

1. When a ship, in consequence of a disaster occasioned by the dangers of the seas, is obliged to put into a port for repairs, if they are such as will require considerable time, the master, for the interest of the shipper, may sell such part of the cargo as is of a perishable nature.

[Cited in Moore v. Hill, 38 Fed. 334.]

2. The shipper may recover the proceeds of the sale by a libel against the ship.

3. In such case no freight is due to the master.

4. The only case in which a pro rata freight is due, is when the merchant voluntarily accepts his goods at an intermediate port, not when they are forced on him by necessity.

Mr. Bangs, for libellants.
Mr. Pike, for claimants.

WARE, District Judge. This is a libel on a bill of lading. The libellant shipped at Boston, on board the Velona, 120²²⁰/₂₀₀₀ tons of ice, to be carried and delivered at Savannah. The vessel sailed in February last, and on her voyage met such severe gales and was so much injured by the violence of the seas that she was obliged to put into the port of Norfolk for repairs. In that situation the master had a right to repair his vessel, if it could be done in a reasonable time, and proceed on his voyage to deliver his cargo, or he might tranship it and send it in another vessel, and thus perform his contract and earn freight. He did neither, but he called a survey on his vessel, and it was found by the report of the surveyors that the repairs required were so considerable, and would require so much time, that he sold the ice at Norfolk. In such a case of disaster, if the cargo is of a perishable nature, and his own ship cannot in a reasonable time be repaired, the master may either sell or tranship the cargo. But it is said that he is not absolutely bound to send forward the cargo by another vessel, but that he ought, as a faithful agent, to do that which will be most for the interest of the merchant. The master is not ordinarily the agent of the shipper for any other purpose than that of carrying and delivering the goods. But in these cases of unforeseen and unprovided necessity, as they have been called, the law clothes him with the authority of a supercargo, and he is to make such a disposition of the cargo as will be most for the interest of the merchant. The Gratitudine, 3 C. Rob. Adm.

1 [Reported by George F. Emery, Esq.]

259, 262. In this instance he sold the ice, and I do not understand that any complaint is made that he did not act discreetly.

The libel claims damages for the non-delivering the cargo according to the tenor of the bill of lading. But the contract was safely to deliver it, the dangers of the seas excepted, and these have prevented the master from performing his contract. He is not liable, therefore, for a breach of his contract. But by the sale of the ice a sum of money has come into his hands, to which the shippers have a claim, and my opinion is that it may be recovered in this action against the vessel. The ship is bound to the merchandise and the merchandise to the ship. This vessel having received the goods must account for them. This is not denied, but it is contended on the part of the respondents that they are entitled to deduct from the proceeds of the sale either the entire freight stipulated for in the bill of lading, or at least a pro rata freight. The contract by a bill of lading is an entirety, and the general principle of the common law is that an entire contract cannot be apportioned. Until the whole is performed nothing is due. Cutter v. Powell, 6 Term R. 320. But by the maritime law, the contract for the transportation of goods, whether by a charter party or bill of lading, admits of an equitable apportionment in one case. When a vessel meets with a disaster by which she is obliged to put into a port for repairs, if the owner of the goods then voluntarily receives them, instead of requiring the master to carry and deliver them at the port of destination, the master is entitled not to the entire but to a pro rata freight. It is on the ground that the merchant voluntarily excuses him from completing his contract. The master is then equitably entitled to a compensation for what he has done, so far as the other party has derived a benefit from it. But the acceptance to give this right to the master must be voluntary. The cases cited in the argument establish this beyond a question. The Nathaniel Hooper [Case No. 10,032]; Hurtin v. Union Ins. Co., [Id. 6,942]; Vlierboom v. Chapman, 13 Mees. & W. 230. In this case there was no option left for the merchant, but the goods were sold from necessity to save them from a total loss.

To escape from this conclusion it is contended for the libellants, that the misfortune that had happened to his ship imposed on the master the responsibility of acting as an agent for the benefit of all concerned; that he thus became the agent of the shipper to make the best disposition of his goods, and that as such he might consent for him to accept the goods at Norfolk. But the agency, which in such cases is thrown on the master by the law, is an agency of necessity, and extends no further than the necessity requires. It is an agency like that of the negotiorum gestor of the Roman law, a person who intervenes in the business of another without a previous mandate. The principal will be bound by his acts so far

as they are proper, judicious, and beneficial to him, either in preventing a loss or procuring him a benefit. It is an agency by which he has a right to act for the benefit of his principal, but not to charge him with a burthen. So, in this case, the law made the master the shipper's agent to sell the ice, to save him from a total loss, but it did not make him the merchant's agent to accept the goods at a port of necessity, to excuse him from performing the whole of his contract, and thus charging him with freight. The case of Vlierboom v. Chapman is a perfect parallel to the present. A cargo of rice was shipped at Batavia for Rotterdam. The ship was disabled in a tempest, and put into Mauritius for repairs. The rice was damaged by sea water, and to prevent a total loss was properly sold by the master. The owners of the ship claimed a pro rata freight; but the court, after taking time to consider the case, held that no freight was due, on the ground that there was no voluntary acceptance of the goods by the owners. The case clearly negatives the idea that the master had any power, as their agent, to accept for them. The decree must be for the full amount of the sale of the ice, deducting the necessary and proper charges of sale.